UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JIM WALPOLE, INDIVIDUALLY, AS MEMBER OF LE PETIT THÉÂTRE DU VIEUX CARRÉ, AND AS PRESIDENT OF THE GUILD OF LE PETIT THÉÂTRE DU VIEUX CARRÉ | CIVIL ACTION |
| VERSUS | NO: 11-2442 |
| LE PETIT THÉÂTRE DU VIEUX CARRÉ, ET AL | SECTION: J(4) |

## ORDER AND REASONS

Before the Court are Third-Party Defendant USF Insurance Company's Motion for Summary Judgment **(Rec. Doc. 6)**, Third Party Plaintiffs Cross Motion for Summary Judgment **(Rec. Doc. 11)** and Motion to Strike the Affidavit of Jim Walpole **(Rec. Doc. 17)**. The motions are before the Court with supporting memoranda and without oral argument.  Each party has filed an opposition to the other's motions **(Rec. Docs. 12; 15; 26)**, and reply memoranda to the various oppositions **(Rec. Docs. 22; 24; 30)** have been filed, as well.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

Founded in 1916, Le Petit Theatre du Vieux Carre ("Le Petit") is one of America's oldest community-based theaters.  The Theatre operates as a 501(c)(3) Louisiana nonprofit corporation whose stated mission is to provide quality theatrical productions and programming to the citizens of New Orleans and the

surrounding region.  In the years following Hurricane Katrina, the costs of repairing the theater, combined with dwindling ticket sales, placed the theater on the brink of bankruptcy, forcing the Theatre to cancel its season of performances and lay off a large number of its staff.

In an effort to save the theater, Le Petit's Board of Directors allegedly began negotiating a deal to sell a portion of the theater space to a local investor who planned to convert the space into a restaurant.  Jim Walpole, a Member of Le Petit and President of the Guild of Le Petit, virulently opposed the deal. On June 20, 2011, he filed suit in the Civil District Court for the Parish of Orleans in an effort to prevent the sale.

The petition, which named both Le Petit and its Officers and Board Members as defendants, alleged that the Le Petit Board was currently negotiating an agreement to sell 60% of Le Petit's Property to a for-profit entity for use as a restaurant.  Because the proposed sale had not been approved by the corporation's voting members, as required by Louisiana nonprofit corporation law, Walpole alleged that the Board's proposed action would be both unlawful and violative of the Board's fiduciary duties to its members and the corporation.  The petition further alleged that the sale would be inconsistent with the corporation's charter and would threaten its status as a tax-exempt not-for-profit corporation.  Walpole also alleged that the Board had

canceled the Theatre's 2011 season of performances, as well as future seasons, and had enacted an amendment to the corporation's by-laws redefining Le Petit's membership without proper notice to the members.  These actions, Walpole maintained, would effectively expel Le Petit's members upon the expiration of the 2011 fiscal year, leaving the Board as the sole authority in the corporation.  Finally, he alleged that the Board had refused to call a special meeting to discuss the proposed sale and by-law amendments in response to the signed requests of fifty of Le Petit's members.

Based on the above allegations, Walpole's specifically sought injunctive relief prohibiting enforcement or operation of the amendments to the by-laws, as well as any other action in furtherance of the proposed sale "until such time as the Board complies with the Theatre's Charter, by-laws, and the law relating to notice and member approval."  In the alternative, Walpole prayed for a writ of mandamus ordering the Board to schedule the special meeting requested by its members to discuss the sale and the recent by-law amendment, as required under the corporation's by-laws.

In response to the lawsuit, Le Petit filed a claim with USF Insurance Company ("USF"), its Directors and Officers Liability Insurer, seeking defense and coverage under its D&O liability policy.  In a letter dated July 5, 2011, counsel for USF

responded that the claims were not covered or were otherwise
excluded under the terms of the policy.  Thus, it notified Le
Petit that no defense would be provided.

    Le Petit and its Officers and Board Members (collectively,
"Le Petit") then filed a third-party claim[1] against USF on July
26, 2011, alleging that USF is liable for damages, penalties, and
attorneys' fees that the Third-Party Plaintiffs suffered as a
result of USF's refusal to defend them in the underlying action,
as required under the policy.  After the state court denied
Walpole's request for preliminary injunction and writ of
mandamus, Walpole and Le Petit entered into a consent judgment,
dismissing Walpole's remaining claims, as well as Le Petit's
reconventional demand with prejudice.  The state court signed the
consent judgment on August 31, 2011, leaving only the Board's
third party claim against USF.

    USF subsequently removed the remaining Third-Party claim to
federal court on September 28, 2011, on the basis of diversity of
citizenship.[2]  Shortly thereafter, the parties filed the instant
cross motions for summary judgment on the issue of whether USF
owed a duty to defend Walpole's lawsuit.  USF also sought and
attached an affidavit from Jim Walpole, attesting that he sought
no monetary damages in his lawsuit against the Board.  In

---

    [1]  See Rec. Doc. 6-5.

    [2]  USF is a foreign corporation organized under Pennsylvania
law with its principal place of business in Michigan.

response, Le Petit filed a motion to strike Walpole's affidavit, arguing that it is irrelevant to the duty to defend issue.

## THE PARTIES' ARGUMENTS

USF argues that the policy does not provide coverage for Le Petit's claim because Le Petit did not become and could not have become obligated to pay any damages award in Walpole's lawsuit because he sought only equitable relief, and not monetary damages.  Thus, it argues that it could not have become "legally obligated to pay" any amount of money to Walpole, as required to trigger coverage under the insuring agreement.  Furthermore, USF argues that Walpole's claims are barred under a number of relevant exclusions.  In particular, it claims that his claims are barred by exclusions for (1) claims seeking relief other than money damages, (2) claims for loss of tangible property or the loss of use of tangible property, (3) claims arising out of the violation of any statute or ordinance, (4), claims for breach of duty based on fraudulent or dishonest acts, and (5) claims arising out a breach of contract.  Thus, because Walpole's claims are unambiguously excluded under the policy, it had no duty to defend Le Petit in the lawsuit.

In response, and in support of its own motion for summary judgment, Le Petit first argues that the exclusion for claims seeking non-pecuniary relief conflicts with the insuring agreement, which creates ambiguity which must be construed in favor of coverage.  However, even if the exclusion is

unambiguous, Le Petit contends that Walpole's claims were not excluded, because he also prayed for "all general and equitable relief" to which he was entitled.  Because Walpole alleged facts which could have resulted in a damage award, it argues that USF owed Le Petit a duty to defend the Walpole lawsuit.  Finally, it argues that the other exclusions USF cites are simply inapplicable to Walpole's claims.

### LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).  A material fact is a fact which, under applicable law, may alter the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

When assessing whether a dispute as to any disputed issue of material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence." Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All
reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory
allegations or unsubstantiated assertions. Little, 37 F.3d at
1075.  A court ultimately must be satisfied that "a reasonable
jury could not return a verdict for the nonmoving party." Delta,
530 F.3d at 399.

    If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim. See Celotex, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists. See id. at 324. The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial. See,
e.g., id. at 325; Little, 37 F.3d at 1075; Isquith for and on
Behalf of Isquith v. Middle South Utils., Inc., 847 F.2d 186, 198
(5th Cir. 1988), cert. denied, 488 U.S. 926 (1988).

                          **DISCUSSION**

    When sitting in diversity, federal courts apply the
substantive law of the state in which they sit.  Citigroup Inc.
v. Federal Ins. Co., 649 F.3d 367, 371 (5th Cir. 2011)(citing

Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).  Because the relevant insurance policy was delivered in Louisiana, it will be construed under Louisiana substantive law. See Thermo Terratech v. GDC Enviro-Solutions, Inc., 265 F.3d 329, 334 (5th Cir. 2001). Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment.  Huggins v. Gerry Lane Enters., Inc., 2006-C-2816, p. 3 (La. 5/22/07); 957 So.2d 127, 129.

Under Louisiana law, an insurance policy is a contract, and courts use general principles of contractual interpretation to give effect to its terms.  See Trinity Industries, Inc. v. Insurance Co. of North America, 916 F.2d 267, 269 (5th Cir. 1990) (citing Breland v. Schilling, 550 So.2d 609, 610 (La. 1989)). The intent of the parties, as manifested by the language of the policy, determines the extent of coverage.  Ledbetter v. Concord General Corp., 95-0809, (La. 1/6/96), 665 So. 2d 1166, 1168. Unless the words have acquired a technical meaning, their intent is to be determined by their general, plain and popular meaning. LA. CIV. CODE art. 2047. Courts should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry. See Trinity Industries, 916 F.2d at 269. If the wording of the policy is ambiguous, however, then it should be construed to provide coverage, instead of to deny it.  See Yount

8

v. Maisano, 627 So.2d 148, 151 (La. 1993).

In the present case, it is undisputed that neither Le Petit nor its Board members became obligated to pay any amount of money by virtue of the consent judgment settling Walpole's lawsuit.  As a result, the scope of coverage is not at issue.  The only issue remaining with respect to the pending third-party claim is whether USF breached its contractual obligations by refusing to provide a defense to Le Petit's Board in the lawsuit filed by Walpole in the Orleans Parish Civil District Court.

An insurer's duty to defend a lawsuit against its insured is broader than its actual liability for damage claims under the policy.  Mossy Motors, Inc. v. Cameras Am., 04-0726, p. 5-6 (La. App. 4 Cir. 3/25/05), 898 So. 2d 602, 606.  For the purposes of determining whether the insurer owes a duty to defend, Louisiana utilizes the "eight corners rule," under which the court must compare the "four corners" of the plaintiff's petition and the "four corners" of the insurance policy without resort to extrinsic evidence.  Martco Ltd. Partnership v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009)(citing Adams v. Frost, 43,503, p. 9 (La. App. 2 Cir. 8/20/08), 990 So. 2d 751, 756).  If the allegations of the plaintiff's petition, liberally construed, fall within the scope of coverage, or disclose even the potential that the insurer would be required to indemnify the insured under the terms of the policy, the insurer must defend the lawsuit.

9

Id.  In other words, if the allegations of the plaintiff's petition are assumed to be true, and there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit." Yount, 627 So. 2d at 153.  If the terms of the policy unambiguously exclude coverage for all of the allegations of the petition, an insurer may refuse to furnish a defense, see Elliott v. Continental Cas. Co., 06-1505, p. 5 (La. 2/22/07), 949 So. 2d 1247, 1250, but if there is even a single claim for which coverage is not unambiguously excluded, the insurer nonetheless owes a duty to defend. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, p.19 (La. App. 1 Cir. 6/25/04), 878 So. 2d 824, 836.

**A. Le Petit's Motion to Strike the Affidavit of Jim Walpole**

Preliminarily, Le Petit has moved to strike the affidavit of Jim Walpole, which USF has attached as evidence in support of its Motion for Summary Judgment, and in opposition to Le Petit's Cross Motion for Summary Judgment.  It is clear that the "only evidence that can be considered in a duty to defend claim is the petition and policy." Richard v. Metro Bingo of Lafayette, Inc., 05-293, p. 8 (La. App. 3 Cir. 3/29/06), 926 So. 2d 83, 88 (citing American Home Assurance Co. v. Czarniecki, 230 So. 2d 253 (1969)); see also Martco Ltd. Partnership, 588 F.3d at 872

10

(noting that the determination of whether an insurer owes a duty to defend must be made "without resort to extrinsic evidence."); Hardy v. Ducote, No. 02-1520, 2005 WL 1719206, at *4 (W.D. La. July 21, 2005)("An insurer's duty to defend a suit is determined solely by reference to the pleadings filed in that suit."). Based on this authority, it is clear that Walpole's affidavit is irrelevant for purposes of deciding the issue of whether USF owed a duty to defend Walpole's lawsuit.  This determination will be made solely by reference to the petition and the USF policy, and Le Petit's Motion to Strike will be granted.

**B.  The USF Policy**

The relevant operative terms of the USF Director and Officer Liability policy are as follows:

**INSURING AGREEMENTS:**

**I.  COVERAGE**

The **COMPANY** will pay on behalf of the **INSURED** all **LOSS** in excess of the Retention not exceeding the limit of liability for which this coverage applies which the **INSUREDS** shall be legally obligated to pay as a result of any **CLAIM** made against the **INSURED** due to a **WRONGFUL ACT,** provided that the **CLAIM** is first made during the **POLICY PERIOD** and written notice of said **CLAIM** is received by the **COMPANY** no later

11

than sixty (60) days after the expiration date of the **POLICY PERIOD** or during any Extended Reporting Period, if applicable.[3]

* * *

**IV. DEFINITIONS:**

    **\* \* \***

**B.**    **(1) CLAIM** means any demand made upon the **INSURED** for monetary damages, whether formal or informal, written or oral, as a result of a **WRONGFUL ACT** or **(2)** any judicial or administrative proceeding initiated against any **INSURED** seeking to hold such **INSURED** responsible for a **WRONGFUL ACT**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom.[4]

**\* \* \***

**H.**    **INSURED(S)** means the **ENTITY** named in the Declaration as named insured and any individual who was, now is, or shall be a director, officer, trustee, employee,

---

[3]  Rec. Doc. 6-6, p. 14.

[4]  Rec. Doc. 6-6, p. 14.

12

volunteer, or staff member of the **ENTITY** and shall
include any executive, board member, or committee
member whether salaried or not . . .

\* \* \*

I.   **LOSS** means any amount which the **INSURED** is legally
obligated to pay or which the **ENTITY** shall be required
or permitted by law to pay for any **CLAIM** or **CLAIMS** made
against them for **WRONGFUL ACTS** and shall include but
not be limited to monetary damages, judgments and
settlements. **LOSS** shall not include fines or penalties
imposed by law and/or any of the following:

  a.   Punitive or exemplary damages or the multiplied
       portion of any damage award;

  b.   Criminal nor civil fines or penalties;

  c.   Taxes;

  d.   The salaries, wages or overhead expenses any
       **INSURED** associated with the defense or
       investigation of a **CLAIM**;

  e.   Any matters deemed uninsurable under the law
       pursuant to which this policy shall construed.[5]

\* \* \*

---

[5]  Rec. Doc. 6-6, p. 15.

13

M.   **WRONGFUL ACT** means any actual or alleged negligent act, error or omission, misstatement, misleading statement, or breach of duty committed by an **INSURED** in the performance of duties on behalf of the **ENTITY.**[6]

* * *

**IV. EXCLUSIONS:**

* * *

I.   This policy does not apply to . . . [a]ny **CLAIM** alleging, based upon or arising out of **CLAIMS**, demands or actions seeking relief or redress in any form other than money damages, or for claimant/plaintiff attorney fees or expenses relating to CLAIMS, demands or actions seeking relief or redress in any form other than money damages.[7]

**C.   Is the Exclusion Ambiguous?**

Le Petit first argues that it is entitled to summary judgment because the exclusion for claims "seeking relief . . . in any form other than money damages" is ambiguous, in light of the policy's definitions of the terms of the insuring agreement.

---

[6]  Rec. Doc. 6-6, p. 15.

[7]  Rec. Doc. 6-6, p. 16.

14

The crux of Le Petit's argument centers upon the definitions of the terms "loss" and "claim."  The policy defines a "loss," in pertinent part, as "any amount . . . which [Le Petit] shall be required or permitted by law to pay for claims for wrongful acts," including but not limited to "monetary damages, judgments, and settlements."  Further, a "claim" is defined as "any judicial proceeding . . . seeking to hold [Le Petit's Board Members] responsible for a wrongful act."

Together, in Le Petit's view, these definitions extend coverage under the insuring agreement to *all* monetary obligations arising out of *all* lawsuits alleging a breach of duty by Le Petit's Board members – even those lawsuits in which the plaintiff seeks only injunctive relief.  Thus, under Le Petit's reading, even the costs of complying with an injunction would be covered under the insuring agreement.  At the same time that coverage is extended to such obligations, however, the exclusion limits coverage to *only* those obligations arising out of claims seeking money damages.  In short, Le Petit argues that the policy on one hand giveth, but with the other hand it taketh away.  This conflict, it argues, creates ambiguity that must be resolved in favor of coverage, requiring USF to provide a defense even if Walpole sought only equitable relief.

The Court is not persuaded by Le Petit's argument.  It is a well-recognized principle of contractual interpretation that an

15

insurance policy must be construed as a whole, with each provision interpreted in light of the other provisions. Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 3-4 (La. 1/15/02), 805 So.2d 1134, 1137.  Employing this principle, a straightforward reading of the two provisions is that the policy's insuring agreement sets forth a general scope of coverage, while the exclusion narrows this broad coverage by narrowing the definition of the term "CLAIM" to exclude suits seeking non-pecuniary relief.

An exclusion can modify or narrow a broadly worded insuring agreement without creating ambiguity.  See Terese v. 1500 Lorene LLC, No. 09-4342, 2010 WL 4668899, at *3 (E.D. La. Nov. 5, 2010)(finding no ambiguity stemming from an exclusion modifying the general scope of coverage under the insuring agreement); Jones v. Louisiana Timber Co., Inc., 519 So. 2d 333, 337 (La. App. 2 Cir. 1988)("We do not believe the instant GL policy is ambiguous. It clearly denominates certain provisions as general and others as specific; the intent to establish specific exclusions to general coverage is plain beyond any doubt.").  The Civil Code, in fact, expressly contemplates that a contract of general scope may include provisions applicable to specific situations.  See LA. CIV. CODE art. 2052; see also Aikman v. Thomas, No. 2003-2241, p.6 (La. App. 1 Cir. 9/17/04), 887 So.2d 86, 90 (noting that, "in the interpretation of statutes and

16

contracts, the specific controls the general"). As a result, the Court finds no ambiguity on this basis.

### D. Is Walpole's Lawsuit Unambiguously Excluded under the Policy?

The exclusion provides that the policy shall not apply to any claim "seeking relief . . . in any form other than money damages," or for attorney's fees arising out of such claims. Reading the insuring agreement in light of the exclusion, only "claims" in which the plaintiff sought "money damages" are covered under the policy. While the policy itself offers no definition of the term "money damages," Le Petit does not contend that the term is ambiguous.[8] Furthermore, the Fifth Circuit has explained that the term "damages," as used in the context of an insurance policy, has a "generally accepted technical meaning in law." Aetna Casualty and Surety Company v. Hanna, 224 F.2d 499, 503 (5th Cir. 1955). "Damages," as distinguished from injunctive or other equitable monetary relief, includes "only payments to third persons when those persons have a legal claim for damages." Id; Continental Ins. Cos. v. Ne. Pharm. & Chem. Co., Inc., 842 F.2d 977, 985 (8th Cir. 1988)(explaining that the term "damages" was not ambiguous, and when used in the context of an insurance

---

[8] Regardless, a term is not ambiguous simply because it is not defined in the policy. Sumner v. Mathes, 2010-0438, p. 6 (La. App. 4 Cir. 11/24/10), 52 So. 3d 931, 935.

policy, "refers to legal damages and does not include equitable monetary relief"); see also International Ins. Co. v. Metropolitan St. Louis Sewer Dist., 938 F. Supp. 568, 571-72 (E.D. Mo. 1996)(construing policy exclusion for "claims, demands or actions seeking relief, or redress, in any form other then money damages" to exclude claims "for anything other than legal damages"); Hatfield v. 96-100 Prince St., Inc., No.94-3917 1997 WL 151502, at *3 (S.D.N.Y. Apr. 1, 1997)(holding that D&O liability insurer had no duty to defend suit requesting equitable relief related to corporate director election in light of exclusion for "claims, demands or actions seeking relief, or redress, in any form other than money damages").  The Court therefore concludes that if Walpole sought relief other than legal damages, as opposed to any form of equitable relief, his lawsuit was not a "claim" for which the policy afforded coverage, and USF was not duty-bound to furnish a defense.

It is beyond dispute that Walpole sought relief in a form other than for damages.  As previously explained, in his prayer for relief, Walpole specifically requested a temporary restraining order and preliminary and permanent injunctive relief restraining the Board from encumbering Le Petit's property without complying with the required notice and voting requirements.  Alternatively, he sought a writ of mandamus ordering the Board to comply with its duties imposed by statute,

18

the corporate charter, and the corporate by-laws.  All of the above constitutes relief other than money damages within the meaning of the policy.  See Fred H. Moran Const. Corp. v. Elnaggar,473 So. 2d 321, 322 (La. App. 1 Cir. 1985)("Injunctive relief, whether temporary, preliminary or permanent, is an equitable remedy. It may order the party against whom it is directed to do something or to not do something."); Board of Trustees of Sheriff's Pension and Relief Fund v. City of New Orleans, 2002-0640, p.2 (La. 5/24/02), 819 So.2d 290, 292 ("Mandamus is an extraordinary remedy which should be applied only where ordinary means fail to afford adequate relief . . . The writ should be issued only in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice.").

Nonetheless, and despite the clear language indicating that coverage is based upon the type of relief *sought* in the underlying suit, Le Petit argues that an insurer cannot avoid the obligation to furnish a defense based solely upon the relief prayed for in a plaintiff's petition.  In support of this argument, it cites the Louisiana First Circuit Court of Appeal's opinion in Thomas v. Appalachian Insurance Company, 335 So. 2d 789, 791-92 (La. App. 1 Cir. 1976).  There, a plaintiff sued a Louisiana state trooper in federal court, alleging that he was injured when the trooper used unnecessary force in arresting him.

19

The plaintiff's petition prayed only for punitive damages, which were excluded under the policy.  The general liability insurer for the state police filed a declaratory judgment action in state court, seeking a declaration that it had no duty to defend the trooper in the underlying lawsuit on account of the punitive damage exclusion in the policy.

The court held that the insurer had a duty to defend its insured in the lawsuit.  Even though the plaintiff had only prayed for punitive damages, which were excluded under the policy, the court explained that the court hearing the suit was "not restricted to such an award" and could have granted the plaintiff "any relief the court believes he is entitled to, even if he has not demanded such relief in his pleading."  Id. at 792.[9]  Thus, because the Plaintiff had alleged facts that "would amply support" an award of compensatory damages, the court concluded that the insurer could not "escape its responsibility to defend on a mere technicality based on the type of relief prayed for" in the plaintiff's petition.  Id.

Based upon this authority, Le Petit argues that the fact that Walpole never explicitly prayed for monetary damages is not

---

[9] The Louisiana Code of Civil Procedure explicitly provides that a court may grant a plaintiff any relief to which he is entitled, based on the facts proved at trial, even if the party has not demanded such relief in his petition.  See La. Code Civ. P. art. 862.

20

determinative, because a court could have held the members of Le Petit's Board liable for damages.  It further adds that Walpole's petition contained a prayer for "all other general and equitable relief" to which he would be entitled.  The Court finds Le Petit's position unpersuasive for the reasons explained below.

First, the policy in the instant case is not identical to the policy in Thomas.  There, the policy did not contain an exclusion based on the type of relief *sought* by the plaintiff, as does the policy here.  As a result, and because the plaintiff had otherwise alleged facts which would otherwise support relief falling within the scope of coverage, the Court found that the precise relief the plaintiff prayed for was not determinative. Here, in contrast, the parties elected to allocate coverage based *precisely* on the type of relief sought by the plaintiff.  The policy provided coverage for suits in which the plaintiff sought damages arising out of a breach of duty by Le Petit's Board, while coverage was unambiguously excluded for those suits in which a plaintiff sought relief in a form other than damages. Accepting Le Petit's argument would essentially render meaningless the unambiguous language of the exclusion and would require the Court to alter the parties' mutually accepted responsibilities, as set forth in the policy.  When the language of an insurance policy is clear, a court must enforce the contract as it is written, and may not "refine away terms of a

21

contract" under the guise of contractual interpretation. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183 (quoting Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La. 1977)).

Second, even assuming that the relief *awardable* is determinative, as opposed to the relief *sought*, Walpole has not alleged facts which would otherwise support an award for damages under Louisiana law.  As such, Thomas is not directly on point. Under Louisiana law, a member of a nonprofit corporation may bring an action against the corporation and its board of directors to enjoin or set aside corporate action on the basis that the corporation lacked the capacity to perform the act.  See La. Rev. Stat.§ 12:208.  While § 2:208(A)(2) allows a corporate member to seek to enjoin the transfer of immovable property by or to the corporation, the statute does not allow a monetary remedy to the member challenging the transfer.  See Slaydon v. Cold Springs Hunting Club, Inc., 842 So. 2d 1187, 1197 (La. App. 3 Cir. 4/2/03)(explaining that La. Rev. Stat. § 208 "provides no monetary remedy to the member aggrieved by the action of the corporation").[10]   While a court may award damages if the

---

[10] See La. Rev. Stat. 12:208(A)(2)("If the unauthorized act, conveyance or transfer sought to be enjoined is being, or is to be, performed or made pursuant to any contract to which the corporation is a party, the court may – *if all of the parties to the contract are parties to the action, if the corporation is without capacity or power to perform the act or make or receive*

unauthorized transfer is to be performed pursuant to a third-party contract, the award may *only* be made to the corporation or to the other party to the contract, and only if *both* have been joined in the action by the member.  Here, Walpole never sued the other party who sought to purchase the Le Petit property as a party in his lawsuit.  Thus, even accepting the factual allegations of his petition as true, no damages could have been awarded.

Furthermore, while Louisiana law does provide a cause of action for wrongful expulsion from a nonprofit corporation, <u>see</u> <u>Schexnayder v. Vacherie Volunteer Fire Dept. No. 1</u>, 491 So. 2d 1322, 1326 (La. 1986), the only relief available to a wrongfully expelled member is a writ of mandamus, and not damages.  <u>See</u> <u>White v. St. Elizabeth B.C. Bd. of Directors</u>, No. 45,213, p.5 (La. App. 2 Cir. 6/2/10), 37 So. 3d 1139, 1143 ("In the present case, plaintiffs sought damages for wrongful expulsion from church membership. Although Section 208 authorizes a member of a nonprofit corporation to file an action asserting that an act of

_____

*the transfer sought to be enjoined, and if the court considers such relief to be equitable* – enjoin the performance of such contract, and in so doing may allow to the corporation, or to the other parties to the contract, compensation for any loss or damage sustained by any of them which may result from the action of the court in enjoining the performance of such contract, but anticipated profits to be derived from the performance of the contract shall not be awarded by the court as loss or damage sustained.")(emphasis added).

the corporation was improper and should be set aside, the statute does not provide a monetary remedy to the member aggrieved by the corporation's act."); <u>Leary v. Foley</u>, 2007-0751, p. 3 (La. App. 4 Cir. 2/13/08), 978 So. 2d 1018, 1020-21 (holding that the sole remedy for a member wrongfully expelled from a nonprofit corporate social club was a writ of mandamus, and not damages).

As a result, the Court is not persuaded that Walpole's prayer for "all other general and equitable relief" was sufficient to require USF to furnish a defense in the underlying lawsuit.  Where a policy excludes coverage for claims seeking relief in any form other than money damages, the plaintiff in the underlying suit seeks only injunctive or other non-pecuniary relief, and Louisiana law does not provide for monetary relief based on the facts alleged, a simple prayer for "all other general or equitable relief" is insufficient to create a duty to defend.[11]  Accordingly,

---

[11]   <u>See Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.</u>, 275 F.3d 384, 388 (4th Cir. 2001)(holding that, where insurance policy covered only actions seeking damages, and plaintiffs in underlying lawsuit sought only equitable relief, plaintiff's prayer for "such further relief as the court deems just" was insufficient to require insurer to defend the lawsuits); <u>Legal Services Corp. v. Continental Ins. Co.</u>, 42 F.3d 1400 (9th Cir. 1994)(where policy afforded coverage only for "damages," and plaintiff sought injunctive relief to prevent any injury from occurring, the fact that plaintiffs requested "further relief as the court deems just and proper [was] insufficient to require a duty to defend"); <u>York Golf & Tennis Club v. Tudor Ins. Co.</u>, 845 A.2d 1173, 1177 (Me. 2004)(finding exclusion for claims "seeking relief, or redress, in any form other than money damages"

Accordingly, **IT IS ORDERED** that Third-Party Plaintiffs'
Motion to Strike **(Rec. Doc. 17)** is **GRANTED**, Third-Party Defendant
USF Insurance Company's Motion for Summary Judgment **(Rec. Doc. 6)**
is **GRANTED**, and Third-Party Plaintiffs' Cross Motion for Summary
Judgment **(Rec. Doc. 11)** is **DENIED.**   Judgment will be entered in
accordance with this Order.

New Orleans, Louisiana this 4th day of January, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

unambiguously excluded lawsuit seeking only injunctive relief
where there were no other factual allegations to support a
potential monetary damages award); Verlan, Ltd. v. John L.
Armitage & Co., 695 F. Supp. 950, 953-54 (N.D. Ill. 1988)("Where
a complaint is devoid of allegations or prayers for relief that
would establish a right to damages, and an insurance company
is obligated to defend its insured only against claims seeking
damages, there is no duty to defend."); Feed Store, Inc. v.
Reliance Ins. Co.,774 S.W.2d 73, 75 (Tex. App. 1989)("If the
boilerplate conclusion in Dairy Queen's complaint encompasses a
request for money damages, then we suppose every lawsuit ever
filed also sought damages . . . All lawsuits seeking "other and
further relief" would precipitate a duty to defend.").